UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| BHARGAV PATEL,<br>     Plaintiff,<br><br>     v.<br><br>ODIGGO INC., *doing business as*<br>Sully.AI;<br><br>AHMED NASSER; and<br><br>AHMED OMAR,<br>     Defendants. | No. 25-cv-632-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Odiggo Inc., Ahmed Omar, and Ahmed Nasser (collectively, "Defendants") appear before the Court seeking dismissal of the claims pled against them. ECF No. 17. For the reasons stated below, the Defendants' Motion is DENIED in part and GRANTED in part.

I.    BACKGROUND

This action concerns a Rhode Island-based physician and a California-based technology company. In May 2023, Plaintiff Bhargav Patel, a pediatric psychiatrist at Brown University Health, met Defendant Ahmed Omar, CEO of Defendant Odiggo Inc., an AI-powered healthcare company, co-founded by Defendant and COO Ahmed Nasser. ECF No. 1 ¶ 25. The parties struck up a conversation about Mr. Patel potentially joining Odiggo. ECF No. 1 ¶¶ 25-27. By March 11, 2024, Mr. Patel began

working for Defendants; by March 29, Mr. Patel was active on the company Slack platform. ECF No. 1 ¶¶ 28-29. For eight months, Mr. Patel performed five to ten hours per week of remote work for Defendants at the request of multiple departments within the company. ECF No. 1 ¶¶ 37, 31. And yet, for those eight months, Mr. Patel received no compensation. ECF No. 1 ¶ 37. On November 22, 2024, after Mr. Patel raised concerns regarding compensation, Defendants hired Mr. Patel as Medical Director, and began compensating him $5,000 per month as an independent contractor. ECF No. 1 ¶ 38. By January 31, 2025, Mr. Patel was once more reclassified as a W-2 employee. ECF No. 1 ¶ 40.

Mr. Patel continued working for Defendants through August 2025. During that period, Mr. Patel's hours increased, his compensation increased, the company's revenue increased, and Mr. Patel received ongoing praise from Defendants. ECF No. 1 ¶¶ 42-53. In August 2025, Mr. Patel opened his inbox to an email from Defendant Mr. Nasser providing notice of his termination effective immediately. ECF No. 1 ¶ 71. The termination email followed concerns raised by Mr. Patel regarding FDA approval and HIPAA compliance. ECF No. 1 ¶¶ 55-69.

On November 26, 2025, Mr. Patel filed this action against Defendants for compensatory, liquidated, treble, and punitive damages, civil penalties, counsel fees, costs, and other equitable relief. Mr. Patel's Complaint pleads six claims: Count I, failure to pay wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; Count II, failure to pay wages under the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws §§ 28-12-1, *et seq.* and 28-14-1, *et seq.*; Count III,

2

misclassification in violation of R.I. Gen. Laws § 28-14-19.1; Count IV, common law breach of contract; Count V, quantum meruit; and Count VI, whistleblower retaliation under the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1, *et seq.*  ECF No. 1.  On March 16, 2025, Defendants filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 17-2.

## II.    LEGAL STANDARDS

To hear a case, a court must have personal jurisdiction over the parties, "that is, the power to require the parties to obey its decrees."  *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999).  The plaintiff bears the ultimate burden of proving that the Court can exercise personal jurisdiction over an out-of-state defendant.  *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (citing *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).  When, as here, personal jurisdiction is challenged early in a case through a Rule 12(b)(2) motion to dismiss and the Court has not held an evidentiary hearing, the Court applies the prima facie standard.  *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022).  Under this standard, a court "acts not as a factfinder, but as a data collector" in determining "whether the plaintiff has proffered facts that, if credited, would support all findings 'essential to personal jurisdiction.'"  *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020) (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)).

Venue refers to the specific geographic location of that federal court that hears a case.  Under Federal Rule of Civil Procedure 12(b)(3), a court may only authorize dismissal when a venue is "wrong" or "improper" in the forum in which it was brought.  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).  Once a defendant raises the issue of venue through a motion to dismiss, the burden is on the plaintiff to demonstrate that venue is proper.  *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979).  If a court finds venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing plausibility, the Court must accept all well-pleaded factual allegations as true, but it need not credit legal conclusions or "threadbare recitals of the elements of a cause of action."  *Id.*  A claim is then plausible when the well-pleaded facts allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court draws on its experience and common sense as it looks to the complaint not for probability but for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.

4

## III.   DISCUSSION

### A.   The Court denies Defendants' 12(b)(2) Motion to Dismiss for lack of personal jurisdiction

Rhode Island's long-arm statute is co-extensive with the Constitution's Due Process Clause. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (citing R.I. Gen. Laws § 9-5-33(a)). To satisfy due process, the defendant must have certain minimum contacts with the forum state such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). General in personam jurisdiction allows a court to hear all claims against a defendant; in the corporate context, general in personam jurisdiction exists where a company is headquartered or maintains its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). This Court lacks general jurisdiction over Defendants. Instead, the question is whether this Court may assert specific in personam jurisdiction over Defendants, for this particular suit, filed by this particular Plaintiff.

Within the First Circuit, the analysis for specific in personam jurisdiction proceeds in three parts. The plaintiff must show: (1) a relationship between the defendant's in-forum activities and the events giving rise to the claim; (2) that the defendant purposefully availed themselves of the forum-state's laws and protections; and (3) that the Court's exercise of jurisdiction is reasonable. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 18 (1st Cir. 2019). Here, the Court finds there to be relatedness, purposeful availment, and reasonableness, and, accordingly, specific jurisdiction over Defendants.

### 1.    Relatedness

Due process requires a nexus between the defendant's in-forum contacts and the plaintiff's cause of action. *Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). The Court views the facts through the lens of the plaintiff's claim. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 487 (1985) (finding relatedness in a contract dispute where out-of-forum defendants entered a contract with an in-forum franchise where the contract made significant mention of the forum); *see also Levinger v. Matthew Stuart & Co., Inc.*, 676 F. Supp. 437, 440 (D.R.I. 1988) (finding relatedness in a breach of fiduciary duty action where the out-of-state defendant agreed to act as nonexclusive agent for an in-forum seller). *But see Russo v. Sea World of Fla., Inc.*, 709 F. Supp. 39, 42 (D.R.I. 1989) (finding relatedness too tenuous in a tort action against a Florida amusement park where plaintiff merely purchased the ticket in Rhode Island); *Sawtelle v. Farrell*, 70 F.3d 1381, 1390-91 (1st Cir. 1995) (finding the relationship between an in-forum estate administrator's malpractice claim against out-of-forum law firms to be "tenuous at best").

"By creating and maintaining an employment relationship with [Mr. Patel]— who is a resident of Rhode Island—[Defendants] created a contact with the state of Rhode Island." *Madden v. Rittal N. Am., LLC*, 643 F. Supp. 3d 305, 311 (D.R.I. 2022). That exact contact, that employment relationship, forms the basis of this action. Defendants recruited Mr. Patel by soliciting Mr. Patel in Rhode Island. Defendants contemplated Mr. Patel's continued work would take place in Rhode Island. Defendants deprived Mr. Patel of wages in Rhode Island, and the economic harm

6

occurred in Rhode Island. The Court thus finds a relationship between Mr. Patel's claim and Defendants contacts sufficient for personal jurisdiction.

### 2. Purposeful Availment

"The purposeful availment prong 'represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior.'" *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014) (quoting *Carreras v. PMG Collins, LLC,* 660 F.3d 549, 555 (1st Cir. 2011)). "The two key focal points of this concept are voluntariness and foreseeability." *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007) (citing *Sawtelle*, 70 F.3d at 1391). "In this progressively globalized economic era of Internet and electronic business communication, it is increasingly common for businesses to employ individuals . . . at remote or off-site locations." *Brian Jackson & Co. v. Eximias Pharm. Corp.*, 248 F. Supp. 2d 31, 36 (D.R.I. 2003). "Courts in this and other circuits have recognized (increasingly so in recent years) that Internet-based contacts, such as e-mail communications, particularly when coupled with other more traditional contacts, offer compelling grounds for the assertion of personal jurisdiction over a non-resident defendant." *Id.* at 36.

This is not a case where Defendants simply interacted with Mr. Patel outside the forum, only for Mr. Patel to drag them into court here. Defendants knowingly hired a Rhode Island resident with Rhode Island credentials to work from Rhode Island, on a nationally marketed AI product. Mr. Patel's conduct was not so

unilateral as to shield Defendants from reasonably anticipating a lawsuit in this forum. Therefore, the personal availment element is satisfied here as well.

### 3.    Fair Play and Substantial Justice

Finally, the Court weighs the reasonableness of asserting personal jurisdiction by referring to the five "gestalt" factors:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Ticketmaster–N.Y.*, 26 F.3d at 209 (citing *Burger King*, 471 U.S. at 477). Here, the forum state has substantial interest in adjudicating the employment grievances of its resident. "The efficient administration of justice also favors Rhode Island, since this action is already proceeding here and this Court has become familiar with the claims involved." *Brian Jackson & Co.*, 248 F. Supp. 2d at 38. While some of Defendants themselves, along with some witnesses and documents, may be in Delaware, California, or outside the United States altogether, such inconvenience does not tip the scale toward unreasonableness.

As such, because the Court has specific jurisdiction over the Defendants, their Motion to Dismiss for lack of personal jurisdiction is DENIED.

### B.    Venue Is Proper in the District of Rhode Island

Defendants also request dismissal of the case pursuant to Rule 12(b)(3) or, in the alternative, transfer of the case pursuant to 28 U.S.C. § 1404(a). Here, 12(b)(3) does not mandate dismissal, nor do the relevant factors favor transferring venue. The

events giving rise to the claim—Mr.  Patel's recruitment, employment, and financial injury—occurred in Rhode Island.    The governing venue statute, 28 U.S.C. § 1391(b)(2), thus permits this civil action before this Court.

In the alternative, Defendants ask the Court to exercise its discretion in transferring the case to the Northern District of California "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see* ECF No. 17-2 at 9 ("The only connection this case has to the District of Rhode Island is the Plaintiff's resident.  That single connection is insufficient to overcome the compelling balance of factors favoring transfer.").  Beginning with a presumption in favor of the plaintiff's choice of forum, courts within the First Circuit may transfer cases where the following factors favor a more appropriate venue: (1) the convenience of the parties and the witnesses; (2) the availability of documents; (3) the possibility of consolidation; and (4) the order in which the district court obtained jurisdiction. *Rodriguez v. Carlos Albizu Univ.*, 585 F. Supp. 2d 240, 245 (D.P.R. 2008) (citing *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)).  The digital nature of the parties' working relationship suggests that no one forum holds an evidentiary advantage.  As to the convenience of the parties, Mr. Patel further responds that "[t]ransferring the case from Rhode Island to California merely shifts the inconvenience . . . from Defendants and onto Plaintiff. . . ."  ECF No. 19 at 34. The Court agrees.  Accordingly, Defendants' Motion to Dismiss for improper venue is DENIED.

C.    **The Court denies in part and grants in part Defendants' 12(b)(6) and 12(b)(1) Motion to Dismiss**

Defendants contend that Mr. Patel fails to state a claim for unpaid wages under FLSA and Rhode Island law, for common law breach of contract, for quantum meruit, and for whistleblower retaliation under the relevant plausibility standard. ECF No. 17-2 at 15-20. Defendants also contend that Mr. Patel lacks Article III standing for his misclassification claim. *Id.* at 18. Confined to the four corners of the Complaint, the Court finds as follows:

1.    **Mr. Patel successfully pleads a claim under FLSA**

"In 1938, Congress passed and President Roosevelt signed the Fair Labor Standards Act." *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025). Under the statute, "[e]very employer shall pay to each of his employees … $7.25 an hour," the federal minimum wage. 29 U.S.C. § 206(a)(1)(C). To successfully plead a claim for unpaid wages under FLSA, a plaintiff must allege: (1) that they were employed by the defendant; (2) that their work involved interstate activity; and (3) that they performed work for which they were under-compensated. *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012).

Defendants contend that they did not "employ" Mr. Patel within the meaning of FLSA. Mr. Patel's own claim of employment is a legal conclusion disallowed by the pleading standard. *Twombly*, 550 U.S. 544. Instead, to determine employment, the Court applies the usual "economic reality" test. *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). The question is whether Defendants supervised and controlled Mr. Patel, determined the rate and method of payment,

10

maintained employment records, and had the power to hire or fire Mr. Patel. *Id.* In each of these regards, the Complaint plausibly suggests that Defendants were to Mr. Patel as employer is to employee. Defendants promoted Mr. Patel, ECF No. 1 at 11, terminated Mr. Patel's employment, *id.* at 10, increased his salary, *id.* at 7, requested evidence of his completed work, *id.* at 7, solicited work via the company's Slack channels, *id.* at 6, and issued Mr. Patel IRS and W-2 forms, *id.* at 17.

Next, while Defendants do not argue that the pleadings are insufficient for failing to plausibly show interstate activity or under-compensation, the Court takes time to reiterate that Mr. Patel successfully pleaded both. First, of course, communication between states is interstate activity by statutory definition. *See* 29 U.S.C. § 203(b) ("'Commerce' means . . . communication among the several States or between any State and any place outside thereof."). Second, Mr. Patel alleges that he worked 5 to 10 hours per week for Defendants between March 11, 2024, and November 21, 2024, designing ads and scripts, booking over 500 meetings, gathering website testimonials, designing psychiatric note templates, providing marketing and social media advice, and securing clinic subscribers, without compensation. ECF No. 1 at 5-6. The Motion to Dismiss Count I is therefore DENIED.

### 2. Patel successfully pleads a claim under RIPWA

RIPWA's protections extend only to employees. R.I. Gen. Laws § 28-14-1. Because Defendants argue that Mr. Patel failed to plausibly plead an employment relationship, they further move to dismiss his RIPWA claim. Here, as explained above, the Complaint plausibly alleges an employment relationship sufficient for

11

pursuing damages under R.I. Gen. Laws § 28-14-19.2 and § 28-14-20. That "Rhode Island's test to determine whether a person is an employee under the RIPWA is broader than that under the FLSA" only buttresses that plausibility. *Sebren v. Harrison*, 552 F. Supp. 3d 249, 257 (D.R.I. 2021). The Motion to Dismiss Count II is therefore DENIED.

### 3.    Patel fails to state a claim for breach of contract

Defendants argue that Patel failed to plausibly state a claim for breach of contract because the Complaint's sole mention of any contract is the conclusory allegation that one was breached. ECF 17-2 at 17. However, express contracts are not the only kind. Implied in fact contracts exist in "circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." *Bailey v. West*, 249 A.2d 414, 416 (R.I. 1969). Express or implied, to succeed on a breach of contract claim, a plaintiff must sufficiently plead the core elements: "that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) (quoting *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)).

The Complaint fails to plausibly show an agreement. While Defendant Ahmed Nasser promised a "win-win" scenario, and expressed openness to providing compensation, ECF No. 1 ¶¶ 25-27, ambiguity surrounding material terms, such as Mr. Patel's obligations and Defendants' compensation, evidences only an "agreement to agree." *See N. Farm Home Owners Ass'n, Inc. v. Bristol Cnty. Water Auth.*, 315

12

A.3d 933, 942-43 (R.I. 2024) (quoting 1 Corbin on Contracts § 2.10 at 213 (2018)) (noting "there is no contract until the parties close their negotiation and express assent to all the terms of the transaction together"); *see also, e.g.*, *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 289 (5th Cir. 2024) (finding that the district court properly dismissed a mere "agreement to agree" under Louisiana contract law). Thus, the Court GRANTS the Motion to Dismiss as to Count IV.

### 4.    Patel successfully states a claim for quantum meruit

Defendants argue that Mr. Patel failed to plausibly state a claim for relief under a theory of quantum meruit. The Court disagrees.

The essence of quantum meruit lies in the inequity of a party that retains a benefit without providing fair compensation. *See S. Cnty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 211 (R.I. 2015). Defendants point to facts that undermine the plausibility of such an "unjust" or "inequitable" scenario—namely, Mr. Patel's promotion and voluntary continuing cooperation with Defendants following eight months of unpaid work. ECF No. 17-2 at 19. While those facts may diminish Mr. Patel's chance to ultimately recover under a quantum meruit theory, "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. 544 at 545. The Motion to Dismiss Count V is therefore denied.

5.     **Mr. Patel successfully states a claim for Whistleblower Retaliation against the Individual Defendants.**

Defendants argue that Patel failed to plausibly state a claim to relief under the RIPWA. Once more, Defendants theory hinges on the statutory meaning of employment. As opposed to Defendant Odiggo, the Individual Defendants, Messrs. Nasser and Omar, contend that they are not "employers" within the meaning of the Act. ECF 17-2 at 20. However, the RIPWA defines employer as "any individual, firm, partnership, association, joint stock company, trust, corporation, receiver, or other like officer appointed by a court of this state, and any agent or officer of any of the previously mentioned classes, employing any person in this state." R.I. Gen. Laws § 28-14-1. Such broad language permits corporate employers and individuals to appear as Defendants in RIPWA cases. *See Rein v. ESS Grp., Inc.*, 184 A.3d 695, 702 (R.I. 2018); *see also Nissensohn v. CharterCARE Home Health Servs.*, 306 A.3d 1026, 1034 (R.I. 2024). RIPWA defines employment more broadly than FLSA, focusing on "the employer's right or power to exercise control over the method and means of performing the work[.]" *Sebren v. Harrison*, 552 F. Supp. 3d 249, 257 (D.R.I. 2021) (quoting *Cayer v. Cox R.I. Telecom, LLC*, 85 A.3d 1140, 1144 (R.I. 2014)).

Here, the Complaint contains enough factual material to plausibly put forth that Messrs. Nasser and Omar employed Mr. Patel within the meaning of the Act by exercising control over the method and means of his performance. The Motion to Dismiss Count VI is therefore DENIED.

14

### 6.    Mr. Patel has standing for his misclassification claim

Finally, Defendants argue that Mr. Patel lacks standing on Count III, the misclassification claim brought under R.I. Gen. Laws § 28-14-19.1, because he fails to plead "a concrete injury" that is actual, real, particularized, and not abstract.  ECF No. 17-2 at 18.  "By definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action; that is to say, a plaintiff who has suffered 'injury in fact.'"  *Meyer v. City of Newport*, 844 A.2d 148, 151 (R.I. 2004) (quoting *R.I. Ophthalmological Soc'y v. Cannon*, 317 A.2d 124, 131 (R.I. 1974)).  Defendants therefore assert that Mr. Patel's misclassification claim must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  ECF No. 17-2 at 18 n.3.

Here, even if Defendants misclassified Mr. Patel, they argue Mr. Patel suffered no harm because he received compensation above minimum wage.  *Id.* at 18.  However, as Mr. Patel points out, "[r]eceiving pay under minimum wage is not the only possibly injury an employee may incur by virtue of being misclassified."  ECF No. 19-1 at 41; *see Haviland v. Simmons,* 45 A.3d 1246, 1257 (R.I. 2012) (holding that the uncertainty of the plaintiff's contractual status with her employer was a "concrete and particularized interest" sufficient to give the plaintiff standing to sue).  Mr. Patel could suffer, and did plead, alternative harms including: loss of income, loss of employment benefits, inconvenience, loss of enjoyment of life, humiliation, and reputational damage.  ECF No. 1 ¶ 149.  The Court leaves the success of that misclassification claim for a later day in the litigation.  Nonetheless, the Motion to Dismiss Count III is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for lack of personal jurisdiction is DENIED.    Defendants' Motion to Dismiss for improper venue is DENIED.  Count IV is dismissed.  Counts I, II, III, V, and VI may proceed.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

July 14, 2026